HOTEL PARTNERS, Americana Ocho Rios Corporation, and Americana Eden II Corporation, Appellants,

v.

Bernard D. CRAIG and Levy & Craig, P.C., Appellees.

No. 05–92–01625–CV.

Court of Appeals of Texas, Dallas.

Dec. 30, 1994.

Rehearing Overruled Sept. 23, 1998.

---

Ellen Garson, Greenberg Peden Seigmyer Oshman Soussan, Houston, Roger B. Greenberg, Greenberg Peden Siegmyer & Oshman, P.C., Houston, for Appellants.

Ira Thomas King, Law Office of Ira Thomas King, Dallas, R. Brent Cooper, Cooper & Scully, P.C., Dallas, for Appellees.

Before McGARRY, C.J., and PRESLAR [1] and CARVER [2], JJ.

1. The Honorable Stephen F. Preslar, Chief Justice, Eighth District of Texas at El Paso, Retired, sitting by assignment.

2. The Honorable Spencer Carver, Justice, Court of Appeals, Fifth District of Texas, Retired, sitting by assignment.

## OPINION

McGARRY, Chief Justice.

This appeal is from an order granting special appearances filed by the Missouri law firm of Levy & Craig, P.C. and its named principal attorney, Bernard D. Craig, Jr., a Missouri resident. The trial court found that the Missouri defendants had insufficient contacts with Texas to warrant the exercise of personal jurisdiction. We affirm.

## BACKGROUND

Americana Ocho Rios Corporation ("Ocho Rios"), Americana Eden II Corporation ("Eden II") and Americana Jamaica Limited Partnership ("Jamaica L.P.") formed a partnership called Hotel Partners to lease a Jamaican resort. Hotel Partners retained Savoy Resort Management Services, Inc. ("Savoy") to manage the resort. Craig and his law firm provided legal services to Savoy and Jamaica L.P.

Hotel Partners, Ocho Rios and Eden II sued Savoy, Craig, Levy & Craig, and Jamaica L.P. for fraud, deceptive trade practices and conspiracy in connection with the alleged diversion of funds from the resort. Craig and his law firm filed special appearances and engaged in discovery proceedings. The trial court subsequently held an evidentiary hearing on the special appearances, and dismissed the action against Craig and his law firm for want of personal jurisdiction. The judgment in favor of Levy & Craig, P.C. was severed. This appeal followed.

## PERSONAL JURISDICTION

■ Appellant's first point of error complains of the trial court's ruling on jurisdiction. Personal jurisdiction is composed of two elements: (1) the defendant must be amenable to the jurisdiction of the court; and (2) if the defendant is amenable to the jurisdiction of the court, the plaintiff must validly invoke that jurisdiction by valid service of process on the defendant. *Ka-*

*wasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 200 (Tex.1985). It is undisputed that service of process was effected in this case in accordance with the long-arm statute. TEX.CIV.PRAC. & REM.CODE §§ 17.041 et seq. (Vernon 1986).

■ Jurisdiction under the Texas long-arm statute reaches as far as the federal constitutional requirements of due process will permit. *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). Thus the issue is whether subjecting Craig and his law firm to the jurisdiction of Texas courts would violate the federal due process clause. *See Kawasaki,* 699 S.W.2d at 200.

■ Federal constitutional requirements of due process limit the power of the state to assert personal jurisdiction over nonresident defendants. *Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). Due process imposes two requirements: (1) the nonresident defendant must have purposely established "minimum contacts" with the forum state; and (2) the exercise of jurisdiction must comport with "fair play and substantial justice." *Id.*

■ "Minimum contacts" requires a substantial connection between the nonresident defendant and Texas, arising from action or conduct by the nonresident defendant purposefully directed toward Texas. *Id.,* at 230. When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contacts with Texas. *Id.* When general jurisdiction is alleged, there must be continuous and systematic contacts between the nonresident defendant and Texas. *Id.* General jurisdiction requires a showing of substantial activities by the nonresident defendant in Texas. *Id.*

■ The "fair play and substantial justice" requirement of due process imposes upon the defendant the burden to present

a compelling case that the presence of some consideration would render jurisdiction unreasonable. *Id,* at 231. The following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Id.*

## STANDARD OF REVIEW

The trial court presumably applied the foregoing jurisdictional formula and concluded that neither Craig nor his law firm had purposefully established minimum contacts with Texas. Appellate review requires the trial court's decision to be measured against a specific standard of review. The parties disagree as to what that standard should be.

The federal courts have held that absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined *de novo* by the reviewing court. *See e.g., Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir.1993). However, the circuits are divided on the standard to be applied when the underlying jurisdictional facts are disputed. The Fifth Circuit simply resolves all conflicts in favor of the party seeking to invoke the court's jurisdiction. *Id.* The Ninth Circuit, on the other hand, would apply an ordinary evidentiary review to the trial court's fact findings. *See Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.,* 970 F.2d 552, 554 (9th Cir.1992) (accepting trial court findings unless clearly erroneous).

The Supreme Court of Texas has implicitly treated *in personam* jurisdiction as a question of law. For example, in *Guardian Royal Exchange,* the court clearly decides both the "minimum contacts" and "fair play and substantial justice" requirements *de novo. See Guardian Royal Exch. Assur. Ltd.,* 815 S.W.2d at 231, 232. However, the supreme court has also presumed disputed fact issues relating to jurisdiction found in support of the trial court's judgment. *Zac Smith & Co., Inc., v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988). This is not inconsistent with the Ninth Circuit approach, because the Supreme Court of Texas cannot review fact issues. *See Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 648 (Tex.1988). All that ever remains before the supreme court is the application of the controlling legal principles.

██ The exercise of *in personam* jurisdiction clearly requires the trial court to resolve any factual disputes presented before applying the supreme court's jurisdictional formula. This Court has held that the correct standard of review of the evidence is a factual sufficiency review. *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.—1993, writ denied). We conclude that on jurisdictional issues, Texas courts review questions of fact and questions of law separately, as in the Ninth Circuit. Consequently, we hold that the appropriate standard of review of a trial court's order granting a special appearance is a *de novo* review, applying the supreme court's jurisdictional formula. *Guardian Royal Exch. Assurance Ltd.,* 815 S.W.2d at 231, 232. The trial court's resolution of disputed fact questions is subject to an ordinary review of the sufficiency of the evidence. *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d at 632.

## APPLICATION OF LAW TO THE FACTS

██ Both Craig and his law firm were required to negate all bases of *in*

*personam* jurisdiction. *See Kawasaki Steel Corp.*, 699 S.W.2d at 201. In determining whether they carried this burden, we review all the evidence that was before the trial court. *Bellair, Inc., v. Aviall of Texas, Inc.*, 819 S.W.2d 895, 898 (Tex. App.—Dallas 1991, writ denied). Absent findings of fact, we presume that any factual disputes were resolved in support of the trial court's order. *Zac Smith & Co., Inc.*, 734 S.W.2d at 666.

### Minimum Contacts

■. Craig and his law firm represented Savoy for over three years. Savoy was headquartered in Texas, and Craig effectuated a change of Savoy's state of incorporation to Texas. Craig travelled to Texas on at least four occasions to represent Savoy in matters relating to the resort hotel that is the subject of this suit. Craig and another attorney with his firm also travelled to Texas on at least five additional occasions to represent Savoy in other matters. Levy & Craig, P.C. billed Savoy over $250,000 for legal services over three years, of which more than $100,000 was paid.

■ Maurice Collins testified that Craig also provided legal services to Hotel Partners. Collins was a vice-president of both Ocho Rios and Eden II. Craig denied representing Hotel Partners. Collins admitted there was no written contract for legal services, and that Levy & Craig, P.C. never billed Hotel Partners, Ocho Rios or Eden II for legal services. Craig did admit holding himself out as counsel for the resort hotel to persons and entities in Jamaica. He did also meet with Collins in Texas, and corresponded with him. The meetings and correspondence concerned the resort and the other legal affairs of Savoy. Craig also admitted being a limited partner in Jamaica, L.P., the third member of Hotel Partners. Jamaica, L.P. was registered in Missouri but headquartered in Texas. Craig apparently had also previously represented Jamaica, L.P. as it

attorney, but there was no evidence of the actions taken on its behalf.

We presume that the trial court found that Levy & Craig, P.C. did not represent appellants. The evidence supports Craig's contention that the actions on behalf of the resort were part of its representation of Savoy, the resort's manager.

■ None of the activities directed toward Jamaica support jurisdiction in Texas. We conclude that the actions taken by Craig and his law firm to represent a Texas entity in matters concerning only Jamaican or other foreign properties are not actions purposefully directed toward Texas. Neither is Craig's investment in Jamaica L.P. an activity directed toward Texas, because limited partners have no voice in management. TEX.REV.CIV.STAT. ANN. art. 6132a–1, § 3.03 (Vernon Supp. 1994); *McLendon v. McLendon*, 862 S.W.2d 662, 676 (Tex.App.—Dallas 1993, writ denied). We conclude, however, that actions taken by Craig and his law firm to represent Savoy in its dealings with the State of Texas and other Texas entities, *are* actions purposefully directed at Texas. These include changing Savoy's state of incorporation to Texas, and any meetings, telephone calls, and correspondence with the Texas members of Hotel Partners and its Texas accountant. These latter contacts, although concerning a Jamaican property, also constituted a part of Savoy's working relationship with other Texas entities.

We conclude from a review of all the evidence that Levy & Craig's Texas contacts on behalf of Savoy, a Texas corporation, were not continuous and systematic enough to constitute "substantial activities" in Texas. When an agent arrives in Texas to represent his principal, only the principal is doing business in Texas. *Ross F. Meriwether & Assoc., Inc. v. Aulbach*, 686 S.W.2d 730, 731 (Tex.App.—San Antonio 1985, no writ). Consequently, the trial court could not exercise general jurisdiction over either Craig or his firm.

Plaintiffs sued Levy & Craig, P.C. for deceptive trade practices and conspiracy designed to divert funds belonging to Hotel Partners to Savoy. They also sued Craig and the firm for malpractice and breach of fiduciary duties. All causes of action but the conspiracy claim are premised upon legal services allegedly provided to plaintiffs. For jurisdictional purposes only, the trial court is presumed to have found that Craig and his firm provided no services to plaintiffs. Consequently, the trial court found no contacts out of which these causes of action could have arisen, such as to support specific jurisdiction.

■ Plaintiffs' conspiracy claim arises out of the legal services Craig provided to Savoy in Texas. However, there is no showing or allegation that the conspiracy claim arises out of any action shown to have been purposefully directed at Texas. Specifically, it was neither shown nor alleged that the conspiracy arose out of Craig's communications or meetings with Collins, or his efforts to change Savoy's state of incorporation. To the contrary, plaintiffs' petition implies that the conspiracy arose out of communications between Savoy, Craig and various travel agencies. There is no evidence that any such communication took place in Texas or involved actions by Craig purposefully directed at Texas. We conclude that the trial court could not have exercised specific jurisdiction over either Craig or Levy & Craig, P.C.

Craig and Levy & Craig, P.C. have negated all bases of *in personam* jurisdiction, as there is neither specific nor general jurisdiction. Defendants having shown an absence of minimum contacts with Texas, it is unnecessary to determine whether the exercise of jurisdiction comports with fair play and substantial justice. Appellant's first point of error is overruled.

## FAILURE TO COMPEL PRODUCTION

Appellant's second point of error contends that the trial court erred in failing to compel the production of documents before ruling on the special appearance. They contend that the documents concerned Levy & Craig's representation of Savoy and would have shown additional jurisdictional contacts with Texas.

Appellants served Craig with seventeen requests for production. Craig objected to all requests, citing attorney/client and attorney work-product privileges. Appellants filed a motion to compel production, and Craig responded with a motion for protective order.

■ The record reflects that the trial court heard evidence and examined the requested documents *in camera*. The trial court signed an order granting Craig's protective order and denying appellant's motion to compel. The order was signed on the same day Craig's special appearance was granted. The record before us contains no statement of facts from the hearing on the competing motions. Consequently, we assume the trial court made all necessary findings to support its ruling. *Forscan Corp. v. Touchy*, 743 S.W.2d 722, 728 (Tex.App.—Houston [14th Dist.] 1987, no writ). Neither does the record contain the documents inspected by the trial court *in camera*. Consequently, there is nothing for us to review on appeal. We conclude that appellants have failed to preserve their complaint. Appellant's second point of error is overruled.

## WAIVER OF SPECIAL APPEARANCE

Appellant's third point of error contends that Craig and his law firm waived their special appearances by filing their motion for protective order.

Rule 120a of the Texas Rules of Civil Procedure provides that a party may specially appear to contest the trial court's jurisdiction over the person of the defendant. The rule states that "every appearance, prior to judgment, not in compliance with this rule is a general appearance." Tex.R.Civ.P. 120a(1). Rule 120a also pro-

vides that "the taking of depositions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance." *Id.*

Appellants contend that all pleadings, including those used in the discovery process, must be made expressly "subject to" the special appearance. They cite as authority *Portland Sav. & Loan Assn. v. Bernstein*, 716 S.W.2d 532 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986). *Bernstein* held that a motion for discovery sanctions which did not expressly state that it was filed "subject to" a special appearance was not in compliance with Rule 120a, and therefore constituted a general appearance. *Id.*, at 535.

In this case, Craig filed most documents expressly "subject to" his special appearance. However, his response to appellant's motion to compel, his motion for protective order, and his letter brief in support of these pleadings did not expressly include "subject to" language. Appellants contend that these pleadings constitute a general appearance under *Bernstein.* We disagree.

It is clear that Craig's response, motion and brief were each a proper use of the discovery process. The plain language of Rule 120a states that the use of the discovery process is not a waiver of a previously filed special appearance. The rule imposes no other requirements. To the extent that *Bernstein* imposes the additional requirement that discovery documents contain magic words stating that it is "subject to" a special appearance, it is unsupported by the clear language of the rule. We decline to follow it.

We hold that Craig's response to appellant's motion to compel, his motion for protective order, and his brief did not waive his special appearance. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.